IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| JANIS CORDERMAN,<br><br>     Plaintiff,<br><br>vs.<br><br>AFSCME COUNCIL 61,<br><br>     Defendant. | No. 4:05-cv-00675-JEG<br><br>O R D E R |

This matter is before the Court on Plaintiff Janis Corderman's Motion to Remand, which Defendant resists. Neither party requested a hearing, and the Court concludes that one is not necessary. For the reasons discussed below, Plaintiff's Motion to Remand is granted.

**SUMMARY OF MATERIAL FACTS**

Plaintiff Janis Corderman ("Plaintiff") was employed by Defendant AFSCME Iowa Council 61 ("Defendant") from July 19, 1982, through July 9, 2005, in the positions of Staff Representative, Associate Director, and most recently, as President. AFSCME International administers Defendant's retirement program, and Plaintiff receives her pension benefits from this entity.[1] Defendant provides its employees with benefits such as vacation accrual, a sick leave / health benefit expense conversion reimbursement plan, expense reimbursement, and sick leave accrual conversion and/or severance pay. Plaintiff states that on the morning of July 9, 2005, she retired. Defendant disputes this, claiming that Plaintiff's tenure as President ended, and she was terminated.[2] Plaintiff alleges that upon her separation from employment, she was entitled to certain benefits under a policy in place for Defendant's nonbargaining unit employees. Specifically, Plaintiff asserts that under the terms of the policy for nonbargaining unit employees in effect on July 9, 2005, she was entitled to severance pay of $2,000.00 and/or payment of her

---

[1] Defendant AFSCME Council 61 is a subordinate of AFSCME International.

[2] The Court has not been provided with a copy of the severance pay policy, but it is likely this distinction is relevant to the eligibility determination regarding severance benefits.

health insurance from the time of her severance to the date she becomes eligible for Medicare and/or she exhausts her accumulated 3,132 hours of unused sick leave. Defendant has failed to pay Plaintiff these benefits, admitting that it has a contract for its bargaining unit and a policy for its nonbargaining unit employees, but denying Plaintiff's eligibility for these benefits under either document.

On November 23, 2005, Plaintiff filed a petition in the Iowa District Court for Polk County. In her petition, Plaintiff asserted state law claims for wage collection and unjust enrichment. On December 1, 2005, Plaintiff filed an amended petition that simply modified the language contained in paragraph 14 of her original petition.[3] The amended petition again asserted claims for wage collection and unjust enrichment. Plaintiff requested the Court order Defendant to comply with the policy and to pay past and future health benefit expenses according to the policy, to pay compensatory damages, liquidated damages, attorneys' fees, and costs.

On December 19, 2005, Defendant filed a Notice of Removal in the United States District Court for the Southern District of Iowa. Defendant contends that in her petition, Plaintiff has alleged Defendant has not properly administered its retirement program as well as health care benefits. Defendant asserts that as such, Title 29 of the United States Code, which contains the Employee Retirement Income Security Act of 1974 ("ERISA"), governs this case. Defendant states that Section 514(a) of ERISA broadly preempts any state law that relates to an

---

[3] Paragraph fourteen of the original petition read as follows:
> Under the policy in effect on July 9, 2005, CORDERMAN is entitled to severance pay of $2,000.00 and/or payment of her health insurance from time of severance to the date CORDERMAN becomes eligible for Medicare, exhausts her accrued sick leave, or obtains employment that covers health insurance for its employees, whichever occurs first.

Paragraph fourteen of the amended petition reads as follows:
> Under the policy in effect on July 9, 2005, CORDERMAN is entitled to severance pay of $2,000.00 and/or payment of her health insurance from time of severance to the date CORDERMAN becomes eligible for Medicare and/or exhausts her accrued sick leave.

2

employee benefit plan, and therefore this Court has original jurisdiction pursuant to 28 U.S.C. § 1331 over any ERISA violation claims and supplemental jurisdiction over Plaintiff's asserted claims of state law violations for wage payment and unjust enrichment pursuant to 28 U.S.C. § 1367.

On December 29, 2005, Plaintiff filed a motion to remand, claiming that the Court lacks original and removal jurisdiction and that no federal question is present. Plaintiff states that her petition has not at any time involved, nor does it now involve, a claim or right arising under the Constitution, treaties, or laws of the United States. Plaintiff asserts that the claims contained in her petition arise solely under state law, specifically Iowa Code §§ 20.23, 91A.2(7)(a) and (b) and Iowa common law.

Defendant resists the motion to remand. Defendant asserts that Plaintiff's petition involves a federal question, namely, Section 502(a)(1)(b) of ERISA. Defendant maintains that because the petition requires the interpretation of a federal statute, it should remain in the United States District Court.

## APPLICABLE LAW AND DISCUSSION

Complete diversity does not exist between the parties; therefore, the only possible basis for the Court's jurisdiction over this case is federal question jurisdiction. "Removal based on federal question jurisdiction is usually governed by the 'well-pleaded complaint' rule." Phipps v. F.D.I.C., 417 F.3d 1006, 1010 (8th Cir. 2005) (quoting Krispin v. May Dep't Stores Co., 218 F.3d 919, 922 (8th Cir. 2000)). The well-pleaded complaint rule provides that "federal jurisdiction exists only where a federal question is presented on the face of the plaintiff's properly pleaded complaint." Krispin, 218 F.3d at 922.

There is nothing on the face of Plaintiff's amended petition that pertains to an employee benefit plan or ERISA, or otherwise raises a federal question. The amended petition makes no mention of any federal statute, nor does it rest on the determination of a substantial federal

3

question of law. Plaintiff's amended petition merely asserts state causes of action for wages and unjust enrichment for unused accumulated sick leave under the terms of the policy pertaining to nonbargaining unit employees.

Although the face of the amended petition does not raise a federal question, "if Congress has completely preempted a particular area, plaintiff may not avoid federal question jurisdiction and the preemption of state law claims by artfully concealing the federal question in an otherwise well-pleaded complaint under state law." Dudek v. Prudential Securities, Inc., 295 F.3d 875, 879 (8th Cir. 2002).

Defendant argues that § 514(a) of ERISA broadly preempts any state law that relates to an employee benefit plan. "[T]he provisions of this subchapter . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144 (Section 514(a) of ERISA). However, "ERISA pre-emption, without more, does not convert a state claim into an action arising under federal law." Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 64 (1987) (citing Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for Southern Cal., 463 U.S. 1, 25-27 (1983)). "[A] defense of federal law, including the defense of federal preemption, is traditionally not a basis for removal." Deford v. Soo Line R. Co., 867 F.2d 1080, 1084 (8th Cir. 1989).

> Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court. Gully v. First Nat'l Bank, 299 U.S. 109 (1936). One corollary of the well-pleaded complaint rule developed in the case law, however, is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.

Metropolitan Life Ins. Co., 481 U.S. at 64. Under the doctrine of complete preemption, the preemptive force of certain federal statutes are deemed "so 'extraordinary' as to convert complaints purportedly based on the preempted state law into complaints stating federal claims from their inception." Krispin, 218 F.3d at 922.

4

"Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal court." Metropolitan Life Ins. Co., 481 U.S. at 66; see also Neumann v. AT & T Commc'ns, Inc., 376 F.3d 773, 779 (8th Cir. 2004) (claims arising under the civil enforcement provision of § 502(a) of ERISA implicate complete preemption). Thus, for complete preemption to permit removal in this case, Plaintiff's claims must relate to an employee benefit plan under § 514, and they must seek to recover benefits due or enforce rights under the terms of the plan pursuant to § 502(a). Id. at 779-780; Crews v. Gen. Am. Life Ins. Co., 274 F.3d 502, 506 -507 (8th Cir. 2001) (concluding the promised benefits were not premised on and did not constitute an employee benefit plan;, therefore, the plaintiff's action did not fall within the scope of § 502(a) and was not preempted).

"[A] claim relates to an ERISA plan when it premises a cause of action on the existence of an ERISA plan." Estes v. Federal Express Corp., 417 F.3d 870, 872 (8th Cir. 2005) (quoting Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., 154 F.3d 812, 822 (8th Cir. 1998)); see also Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97 (1983) ("A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan.").

Plaintiff disagrees with Defendant's contention that the benefits she complains of in her amended petition are part of an ERISA plan subject to federal jurisdiction, arguing instead that by failing to pay her these benefits, Defendant is not violating the administration of the AFSCME International plan, but rather Defendant is violating its own separate employment policy pertaining to eligibility for these benefits. Plaintiff asserts that Defendant adopted the written agreement of its bargaining unit employees for its nonunion employees and that this written agreement covers the eligibility requirements for the severance benefits of which she complains.

5

"[N]ot every policy that provides for the payment of severance benefits is necessarily an ERISA plan." Emmenegger v. Bull Moose Tube Co., 197 F.3d 929, 934 (8th Cir. 1999); see also Kulinski v. Medtronic Bio-Medicus, Inc., 21 F.3d 254, 256 (8th Cir. 1994) (citing Wells v. Gen. Motors Corp., 881 F.2d 166, 176 (5th Cir. 1989)) ("An employer's decision to extend benefits does not constitute, in and of itself, the establishment of an ERISA plan."). "Congress pre-empted state laws relating to *plans*, rather than simply to *benefits*." Fort Halifax Packing Co., Inc. v. Coyne, 482 U.S. 1, 11 (1987).

> The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002. "ERISA will be implicated, then, only if the benefits involved are administered according to a plan of some sort. In other words, ERISA regulates only those benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation." Emmenegger, 197 F.3d at 934 (quoting Fort Halifax, 482 U.S. at 7 n.5).

> The pivotal inquiry is whether the plan requires the establishment of a separate, ongoing administrative scheme to administer the plan's benefits. Simple or mechanical determinations do not necessarily require the establishment of such an administrative scheme; rather, an employer's need to create an administrative system may arise where the employer, to determine the employees' eligibility for and level of benefits, must analyze each employee's particular circumstances in light of the appropriate criteria.

Kulinski, 21 F.3d at 257. "Severance benefits are characterized as a plan when they require an ongoing administrative program to meet the employer's obligation." Crews, 274 F.3d at 506 (quoting Fort Halifax, 482 U.S. at 11) (quotations omitted).

6

> The factors to consider when deciding whether a plan is part of an ongoing administrative scheme are: (1) whether the payments are continual and ongoing rather than a one-time lump-sum payment; (2) whether the employer undertook any long-term obligation with respect to the payments; (3) whether the severance payments come due any time the employer terminates an employee rather than upon the occurrence of a single, unique event; and (4) whether the severance arrangement under review requires the employer to engage in a case-by-case review of employees.

Petersen v. E.F. Johnson Co., 366 F.3d 676, 679 (8th Cir. 2004); see also Crews, 274 F.3d at 506; Rosati v. Cleveland-Cliffs, Inc., 259 F. Supp. 2d 861, 869 (D. Minn. 2003). Plaintiff states that under the terms of the policy pertaining to nonbargaining unit employees, she is entitled to either severance pay in the amount of $2,000, or, that her 3,132 accumulated unused hours of sick leave be converted to health insurance coverage to be paid for by Defendant until such unused leave hours are exhausted.

Fort Halifax is considered the seminal Supreme Court case on whether a severance plan is an employee welfare benefit plan governed by ERISA. In that case, the Supreme Court examined whether a Maine statute that required employers to pay a one-time severance payment to employees was preempted by ERISA. Fort Halifax, 482 U.S. at 3-4. The Court noted that ERISA preemption was intended to afford employers a uniform set of administrative procedures governed by a single set of regulations and that these concerns arise only with respect to benefits that require an ongoing administrative scheme to meet the employer's obligations with respect to the benefits. Id. at 11. The Court reiterated that ERISA preempts state laws relating to *plans*, rather than *benefits*. Id.

> The Maine statute neither establishes, nor requires an employer to maintain, an employee benefit plan. The requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation. The employer assumes no responsibility to pay benefits on a regular basis, and thus faces no periodic demands on its assets that create a need for financial coordination and control. Rather, the employer's obligation is predicated on the occurrence of a single contingency that may never materialize. The employer may well never have to pay the severance benefits. To the extent that the obligation to do so arises, satisfaction of that duty involves only making a

7

> single set of payments to employees at the time the plant closes. To do little more than write a check hardly constitutes the operation of a benefit plan. Once this single event is over, the employer has no further responsibility. The theoretical possibility of a one-time obligation in the future simply creates no need for an ongoing administrative program for processing claims and paying benefits.

Fort Halifax, 482 U.S. at 12. Based on these facts, the Court concluded that the Maine statute did not establish an ERISA plan and that ERISA preemption of the Maine statute would not serve the purpose for which ERISA's preemption provision was enacted. Id. at 14-15.

In Crews, the Eighth Circuit found that where the severance plan required a one-time lump-sum payment, the employer did not undertake any long-term obligation with regard to the payment, and the payment was triggered by a single, unique event, the promised benefits were not premised on, nor did they constitute, an employee benefit plan subject to ERISA. Crews, 274 F.3d at 506-507. Similarly, in Kulinski, the court found that no ERISA plan existed where the employer had no discretion regarding eligibility for the payment of benefits and such payment only required the writing of a check. Kulinski, 21 F.3d at 258. The court concluded that "such a simple, mechanical task does not require the establishment of an administrative scheme" and thus it was not an ERISA plan. Id.

Relying in part on Fort Halifax, the Fifth Circuit in Fontenot v. NL Industries, Inc., concluded that because the severance plan involved a one-time lump-sum payment, triggered by a single event, which required no administrative scheme to meet the employer's obligation with respect to the benefits, the severance plan was not an employee benefit plan for purposes of ERISA. Fontenot v. NL Industries, Inc., 953 F.2d 960, 962-963 (5th Cir. 1992). In Boyles v. Metso Minerals Industries, Inc., the district court, applying the "ongoing administrative scheme" standard contained in Emmenegger and Kulinski, found that the severance plan was not an ERISA plan. Boyles v. Metso Minerals Industries, Inc., 2003 WL 21542338, *5 (N.D. Iowa 2003). In that case, the court found that the benefits at issue were not subject to continuous or periodic payment, the employer was not obligated for a prolonged period of time with respect to

8

making the payments, eligibility was triggered by a specified event, and no case-by-case analysis of individuals was necessary in order to determine eligibility. Id.

Other cases have found severance policies did constitute an employee benefit plan subject to ERISA. In Emmenegger, the Eighth Circuit examined whether the severance plan required an ongoing administrative program. Emmenegger, 197 F.3d at 934-935. The court found that no single event triggered a one-time payment of benefits to all participants, employees eligible for benefits under the severance plan might be terminated singularly or in groups of indeterminate size, terminations that qualified employees for severance benefits could take place at any time, and benefits were to be paid only to employees who were not terminated for disciplinary reasons and who also had given excellent service to the company. Id. at 935. The court concluded that based upon those specific facts, the severance plan required ongoing administration and was an employee welfare benefit plan under ERISA. Id.

In Petersen, the court found the severance plan had all the earmarks of one governed by ERISA, noting that the benefits were not one-time lump-sum payments, the company had to monitor the payment of the benefits to ensure the total amount paid did not exceed a pre-set amount, there was no single, unique event that triggered payment of the benefits, and the severance plan required the employer to conduct a case-by-case review to determine eligibility. Petersen, 366 F.3d at 679-80. The court concluded that the plan required an ongoing administrative scheme and was therefore governed by ERISA. Id. at 680.

The Second Circuit has also held that a severance plan constitutes a "welfare benefit plan" under 29 U.S.C. § 1002(1)(A). Gilbert v. Burlington Indus., 765 F.2d 320, 325 (2nd Cir. 1985). In Gilbert, the severance policy at issue contained specific requirements for eligibility and conditions for benefit determination. Id. at 323. In Antolik v. Saks Inc., the district court noted the four factors that are to be considered in determining whether payments require an ongoing administrative scheme and concluded that the severance payments at issue in that case

9

were part of an ERISA benefit plan.  Antolik v. Saks Inc., 278 F. Supp. 2d 997, 1003 (S.D. Iowa 2003) (finding the determination regarding eligibility required more than a simple mechanical determination, as the plan administrator was required to review the circumstances of each employee based upon the eligibility criteria).

Whether a severance pay policy is an employee benefit plan for purposes of ERISA requires a case-by-case examination of the terms of the particular severance policy at issue and the above cases make clear that the factual determinations are crucial in determining whether Defendant's policy regarding severance benefits relates to an ERISA plan.  Without a record containing adequate details of the severance policy for nonbargaining unit employees, the Court is presented with an inadequate record and therefore cannot make the necessary findings.  It appears from the factual allegations that the payments at issue could either be a one-time lump-sum payment, or continual and ongoing in nature, which in turn means the employer's obligation could either be long-term or it could not.  Based on the factual allegations that both parties accept, the benefits at issue require some type of eligibility determination under the terms of the policy for nonbargaining unit employees; however, the current state of the record fails to disclose what triggers eligibility for the payments Plaintiff claims she is owed, whether simple, mechanical determinations are made or whether a case by case review is necessary.  It is therefore unclear whether the policy for nonbargaining unit employees that provides for the payment of the severance benefits at issue requires the establishment of a separate, ongoing administrative scheme in order to administer those benefits.

> Congress intended pre-emption to afford employers the advantages of a uniform set of administrative procedures governed by a single set of regulations.  This concern only arises, however, with respect to benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation.  It is for this reason that Congress pre-empted state laws relating to plans, rather than simply to benefits.  Only a plan embodies a set of administrative practices vulnerable to the burden that would be imposed by a patchwork scheme of regulation.

Fort Halifax, 482 U.S. at 11-12.  The Court has been provided with an insufficient record and is thus unable to make these determinations.  Defendant, who bears the burden on removal, has failed to establish that an ongoing administrative scheme is necessary to administer the benefits at issue, and thus the Court cannot conclude that the policy relates to an ERISA plan.

## CONCLUSION

Defendant, as the party seeking removal and opposing remand, has the burden of establishing federal subject matter jurisdiction.  In re Business Men's Assur. Co. of America, 992 F.2d 181, 183 (8th Cir. 1993).  Defendant has failed to establish that the benefits at issue relate to an ERISA plan.  Removal jurisdiction is strictly construed, and all doubts about federal jurisdiction are to be resolved in favor of remand.  Id.  Based on the current record and the recognition Defendant bears the burden of demonstrating federal jurisdiction, the Court must conclude that Plaintiff's amended petition is not subject to complete preemption by ERISA.  In the absence of demonstrated federal jurisdiction, Plaintiff's Motion to Remand (Clerk's No. 3) must be **granted**.  The above-entitled action is remanded to the Iowa District Court for Polk County.

**IT IS SO ORDERED.**

Dated this 31st day of July, 2006.

JAMES E. GRITZNER, JUDGE
UNITED STATES DISTRICT COURT